**Bernadine Rose BROKENLEG, Appellant,**

v.

**Bernard C. BUTTS, Sr., et ux., Appellees.**

**No. 6638.**

Court of Civil Appeals of Texas, El Paso.

Nov. 16, 1977.

Rehearing Denied Dec. 21, 1977.

Bertram E. Hirsch, Lawrence A. Rappoport, Ass'n on American Indian Affairs, Inc., New York City, for appellant.

Pechota & Amiotte, Terry L. Pechota, Mission, S. D., amicus curiae Rosebud Sioux Tribe.

John R. Lee, Kermit, for appellant.

Michael L. Fostel, Kermit, for Guardian ad Litem.

## OPINION

OSBORN, Justice.

This appeal is from a judgment terminating the parental rights of a father and mother and awarding custody of their seven-year-old daughter to her paternal grandparents. The father voluntarily relinquished his rights to the child and there being no appeal from that part of the judgment terminating his rights, that part of the judgment has become final. The mother appeals from that part of the judgment terminating her rights and as to that part of the judgment we reverse and render. We affirm that part of the judgment which finds that the best interest of the child will be served by appointing the grandparents as managing conservators.

The marriage between Bernard C. Butts, Jr., and Bernadine Rose Brokenleg was annulled when their only child, Tiffany, was eighteen months old. The mother and child continued to live in California for several months and then in May, 1972, they moved

to Parmelee, South Dakota, and since that time Bernadine has lived on the Rosebud Sioux Indian Reservation, she being a full-blooded Sioux Indian. In July, 1973, Mr. and Mrs. Bernard C. Butts, Sr., Appellees, and their son, Bernard C. Butts, Jr., went to South Dakota and visited Bernadine and Tiffany, whom they had asked to go with them on their vacation. Bernadine was unable to go but agreed that Tiffany could go with her relatives. There is a dispute in the testimony as to whether or not the grandparents were going to keep Tiffany after the vacation or whether she was to be returned to her mother on the Reservation. In fact, the Appellees took Tiffany to their home in Kermit, Texas, following the vacation and she has lived with them since that time.

Bernadine visited her daughter in Kermit in December, 1973, again in December, 1975, and in August, 1976. She also called and talked to Tiffany on the telephone several times each year, wrote to her occasionally, and left $50.00 for her support on the last visit. Bernadine was employed as a secretary at $2.00 per hour from November, 1973, until April, 1974. She was unemployed until going to work as a teacher's aide at $2.30 per hour in August, 1974, although there is some evidence in the record that that job did not begin until February, 1975. Following an accident, she was unemployed from May, 1975, through August, 1975. At the time of trial, she was continuing to work as a teacher's aide and also earned $200.00 per month as a part-time tutor of college students.

Mr. Butts, Sr., is a production foreman for an oil company and his wife is circulation manager for a weekly newspaper. Together they earn over $2,000.00 per month. They have a home in Kermit in which Tiffany has her own bedroom. She is doing well in school and attends church regularly. She is well-fed and clothed and receives good medical attention when needed. Apparently, she is a happy, well-adjusted child, who testified in camera that she desires to stay with her grandparents.

Although Bernadine testified that she had adequate housing for her daughter on the Reservation, Appellees said the house was dirty and without adequate bathroom facilities which resulted in the need for an outhouse, and that when Tiffany was bathed, the dogs were in and out of the water. They testified that when they picked Tiffany up in July, 1973, she had a cold, tonsillitis, and ticks in her hair.

A psychiatrist testified that Bernadine was a competent mother and the best interest of the child would be served by placing custody with the mother. Two tribal officers testified in behalf of Bernadine and said she had a good reputation and that Tiffany was a normal child while living on the Reservation and would be well accepted now.

The trial Court filed findings of fact and conclusions of law. It found that Bernadine left Tiffany in the possession of her grandparents in July, 1973, without expressing an intent to return, and that Bernadine at no time provided adequate support, although having adequate financial resources to do so. It also found that it would be detrimental and would endanger the physical and emotional well-being of the child to return her to her mother's custody to be reared on the Indian Reservation. He concluded that Bernadine had voluntarily left the possession of the child with one not a parent without expressing an intent to return and without providing adequate support of the child, and that she remained away for a period of at least three months. It also concluded that she failed to support her child in accordance with her ability during a period of one year ending within six months of the date of the filing of the petition; and further that it would be in the best interest of the child to terminate the parental rights between Bernadine and Tiffany.

The Appellant attacks each of the trial Court's findings which serve as a basis for the judgment terminating the parental rights of the mother. The Appellees have filed no brief. The conclusions of law reflect that the trial Court has used both

Section 15.02(1)(B) and (F)[1] as a basis for its decision. By her first point of error, Appellant attacks the findings made under Section 15.02(1)(B). As noted in *Schiesser v. State*, 544 S.W.2d 373 (Tex.1976), there are four elements to this particular Section of the Family Code. They are: (1) voluntarily leaving the child; (2) without expressing an intent to return; (3) without providing for the adequate support of the child; and (4) remaining away for a period of at least three months. Of course, best interest of the child still remains an issue under Section 15.02(2). Although the Appellant attacks each of the findings as to the four elements mentioned above, we only need concern ourselves with the third one which is a failure to provide for the adequate support of the child. As noted in the commentary following this Section of the Family Code in 8 Tex.Tech.L.Rev. 93 (1976), the standard for determining nonsupport under Subparagraph (B) is whether or not there is provision for adequate support of the child, rather than the parent's ability to support the child as in Subparagraph (F). The evidence in this case all reflects that the grandparents were able to and did in fact adequately support the child from the day Bernadine turned Tiffany over to them in July, 1973, until the date of trial. They testified themselves that they provided for all of her physical and medical needs and that she was well-fed, clothed, and in good health during the time she remained in their custody. Since the test under this Subparagraph is not whether or not the parent actually supported the child, but whether or not arrangements were made for the adequate support of the child, and the evidence is undisputed that they were, we conclude that Section 15.02(1)(B) is not applicable and we sustain Appellant's Point of Error No. I.

■ The second point of error attacks the trial Court's finding that Appellant failed to support her child in accordance with her ability during a period of one year ending within six months of the date of the filing of the petition under Section 15.02(1)(F).

The petition was filed on April 21, 1975. Obviously, one year means twelve consecutive months. Thus, it was necessary that there be a period of twelve consecutive months sometime between October 21, 1973, and April 21, 1975, when the Appellant failed to provide support in accordance with her ability. The evidence is without dispute that during that entire period she made no contribution. But under the evidence as set forth above, we find no period of twelve consecutive months where she had an ability to contribute to the support of her child. Although she worked from November, 1973, until April, 1974, without making any contribution, that period is far short of twelve consecutive months. If she did, in fact, go to work in August of 1974 and worked until April, 1975, the period of time is still short of twelve consecutive months. The evidence is without dispute that she was unemployed from April, 1974, at least until August, 1974, and perhaps even until February, 1975. There is no evidence that she had any ability to support her child during that period of time, and thus there are no twelve consecutive months for the period of one year during which she failed to support her child in accordance with her ability to do so as required by Section 15.02(1)(F). *Cawley v. Allums*, 518 S.W.2d 790 (Tex. 1975); *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.1976).

Even if it should be determined that because of her earnings the Appellant had an ability to contribute to the support of her child for a period of one year ending within six months of the date of the filing of the petition in 1975, we conclude that under the holding in *Holley v. Adams*, 544 S.W.2d 367 (Tex.1976), the mother's failure to support is excused. Of course, this issue of excuse must be considered under the holding in the *Holley* case under Section 15.02(2) in deciding the best interest of the child.

■ In the event we should be in error as to either of the first two points, we consider and sustain the third point of error which contends that the trial Court erred in find-

---

1. All Section references are to Texas Family Code.

ing that the best interest of the child requires termination of the parent-child relationship. The issue raises several difficult questions. First of all, we conclude that a parent-child relationship may be terminated even though there is no proof or finding of unfitness on the part of the parent to remain as a parent. Certainly, this is the rule on the issue of custody. *Herrera v. Herrera*, 409 S.W.2d 395 (Tex.1966); *Tiller v. Villasenor*, 426 S.W.2d 257 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ); *De Le Hoya v. Saldivar*, 513 S.W.2d 259 (Tex.Civ. App.—El Paso 1974, no writ). The same rule has been applied in cases involving termination of parent-child relationships. In the case of *In re P._*, 526 S.W.2d 135 (Tex.Civ.App.—Dallas 1975, no writ), the Court said:

"Appellant contends that appellee has the burden of proving that the natural parent at the time of filing this action was an unfit parent. We cannot agree. Tex.Family Code Ann. Sec. 15.02 (Vernon 1975) places no such burden upon petitioner. Even precode decisions held that a court may terminate parental rights without finding that the parent is unfit, where it is in the best interest of the child. *McBrien v. Zacha*, 351 S.W.2d 101 (Tex.Civ.App.—Dallas 1961, writ ref'd n.r.e.); *Scozzari v. Curtis*, 398 S.W.2d 819 (Tex.Civ.App.—Fort Worth 1966, no writ)."

There are cases with language to the contrary. See *Hall v. Harris County Child Welfare Unit*, 533 S.W.2d 121 (Tex.Civ.App. —Houston [14th Dist.] 1976, no writ); and *F._ v. State*, 525 S.W.2d 933 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). But in *Holley v. Adams*, supra, and *Schiesser v. State*, supra, the Court makes no mention of such requirement and certainly the Statute does not indicate that "unfitness" is an issue in itself.

But in the *Holley* case, the Court lists eight factors which may, among others, be considered in deciding the best interest of the child. One of the factors listed is acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and this would seem to include the element of "unfitness." The difficulty of the issue lies in part in the fact that most of the factors listed have some equal application to both the issue of custody and the issue of termination. For instance, the first factor listed in that opinion is the desire of the child. In this case, the seven-year-old child testified in camera that she did not want to go with her mother but preferred to stay in Kermit. That may be strong evidence on the custody issue, but questionable evidence on the termination issue. Certainly, the child did not testify that she never wanted to see her mother again. Another listed element is stability of the home. Undoubtedly, the evidence shows greater stability in the home of the grandparents who are well able to provide for the physical, mental and spiritual needs of Tiffany, and based upon such evidence we agree that custody was properly placed in the grandparents. But does the fact that Appellees have a more stable home for the care and custody of Tiffany mean she should have all relationships with her mother terminated even though the mother has on other occasions visited her daughter in that stable home without any apparent problems arising at the time? On the issue of unfitness, the trial Court has made no findings and did not consider that to be an issue in the case. Certainly, the evidence in this case would not have supported any affirmative finding had one been made. Likewise, the record is void of evidence indicating that visitations upon the part of the mother in the past have created any emotional or physical dangers which call for termination of the parent-child relationship.

The facts in this case are somewhat similar to those in the *Holley* case where the financial support from the mother was practically nil, visitations seldom, but the ability to support much stronger. In that case, the Court said:

"However, as previously noted, any excuse for this failure to support is to be considered under best interest. A comparison of the facts of this case to the circumstances of *Heard v. Bauman* [443 S.W.2d 715 (Tex.1969)], supra, leads to

the conclusion that the failure to support was excused. In the instant case David Adams testified that Nanci Holley voluntarily agreed to give him custody of the child during the course of the divorce proceedings in order to assure that the child would be provided adequate financial support. Nanci Holley was never ordered to make support payments. It was undisputed that the child had been properly cared for while in his father's custody and that David Adams and his wife never sought or wanted any financial support for the child from Nanci Holley. Therefore, Nanci Holley's duty to support her child was excused and the fact that the failure to support is excused is one of the factors to be considered in ascertaining the best interest of the child."

As the Court noted in *Wiley v. Spratlan*, supra, there is a substantial difference between suits for conservatorship, possession and support of children, and those to terminate a parent-child relationship, and the difference in the proceedings justifies the caution with which Courts have characteristically considered termination cases. While we conclude that all of the factors listed as bearing on the best interest of the child in the *Holley* case support the trial Court's conclusion that custody should be awarded to the grandparents in this case, we also conclude that none of those factors compel termination of the mother's rights as being in the best interest of the child. The father's rights have been terminated. The grandparents have not testified as to any intention to adopt their granddaughter, no evidence has been offered that the mother is unfit, and we find no compelling reason to terminate "The natural right which exists between parents and their children [and which] is one of constitutional dimensions." *Wiley v. Spratlan*, supra.

The foregoing makes it unnecessary for us to pass on the Appellant's last two points of error.