William Conrad **DRESSLER**, Appellant,

v.

**Maxie Dean ALDRIDGE et ux.**, Appellees.

No. 6707.

Court of Civil Appeals of Texas, El Paso.

May 17, 1978.

Rehearing Denied June 21, 1978.

Maebius & Duncan, Inc., John K. Sharber, San Antonio, for appellant.

Joe K. McGill, Seminole, for appellees.

OPINION

OSBORN, Justice.

This is an appeal from an order of the District Court of Gaines County terminating the parental rights of a natural father to his two minor sons, who are now twelve and eight years old, and permitting a stepfather to adopt both boys. We affirm.

The Appellant, William C. Dressler, was married to Mary Staker on October 24, 1964. Two boys, Grant and Jeffrey, were born to that marriage. These parents obtained a divorce in West Virginia in January, 1970. The decree gave Mary custody of the boys, but provided that William could have custody of Grant during the summer months when the boy was not in school, and make like provision for Jeffrey when he became six years of age. At that time, William was a medical student and the decree further provided that after he graduated from school in May, 1971, and began receiving a salary as an intern he was to pay $75.00 per month per child as support and maintenance for the children.

In 1970, William had custody of Grant for the summer without any major problems. All of the testimony was that the boy enjoyed his relationship with his father. The same thing occurred during the summer of 1971. In May, 1971, Mary married Maxie Aldridge. William paid child support payments as provided for in the divorce decree without any problems arising until the spring of 1972. At that time, he was told by Mary that he could not have Grant that summer. William quit making support payments and filed a contempt proceeding in West Virginia. That Court dismissed the matter for want of jurisdiction because the mother was no longer living in the State. At that time, Mary and her husband lived in Arizona where he was serving in the military. They subsequently moved to Lamesa in February, 1972, to Grand Prairie in August, 1972, and to Seminole in early 1975. William testified that during this period he had difficulty locating the where-

abouts of his sons, and when he tried to call, was eventually told he could not talk to Grant anymore. He finally learned that his sons were in West Texas and he flew out and saw the boys briefly in October, 1976. He did not see them again until this hearing in March, 1977.

At this hearing, Mary, her husband, her mother, and her father-in-law and mother-in-law all testified in favor of the termination suit and adoption proceedings. William, his present wife, his sister, and his father all testified in opposition.

It appears that Mary is now happily married, her husband is a farmer at Seminole, and they have a child of their own born in 1976. The two boys appear to have a good relationship with their stepfather and are using his name. William has also remarried, is now a medical doctor in the Air Force, and he and his wife have two young children. He and his family still love Grant and Jeffrey and he desires to continue their parent-child relationship.

There is no dispute but that Dr. Dressler did not support the children in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition for termination of parental rights, and the trial Court so found. See Sec. 15.02(1)(F), Tex.Family Code Ann.

Mrs. Aldridge testified that she made no complaints when the support payments stopped; she did not want the support money then and does not want it now. Mr. Aldridge said if the support money had been sent, it would have been used for the benefit of the boys and that there had been times when they could have used some additional support. Dr. Dressler now makes $20,000.00 a year as an Air Force Major, and he is willing to pay support, but also wants to be able to exercise his summer custody rights. He readily recognizes his default under the divorce decree, but attempts to excuse it on the basis that his ex-wife first breached the Court order and says that he was current in his payments when she decided on a rule of "self help" in violation of the divorce decree. This brings

us to the requirement that "termination is in the best interest of the child." Sec. 15.02(2), Tex.Family Code Ann. The Statute and cases make it clear that the proof must establish one of the acts or omissions under Sec. 15.02(1), and also that termination must be in the best interest of the child under Sec. 15.02(2). *Wiley v. Spratlan,* 543 S.W.2d 349 (Tex.1976); *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976); *Schiesser v. State,* 544 S.W.2d 373 (Tex.1976); *Whiteside v. Dresser,* 543 S.W.2d 158 (Tex.Civ. App.—Waco 1976, writ ref'd n. r. e.). Under the holding in the *Holley* case, the excuse for failure to support must be considered under the issue of the best interest of the child. The Court, in that opinion, also listed some eight other factors, among others, to be considered in deciding the best interest issue. We now consider those issues.

### (A) Desires of the Child

Although the Court appointed a guardian ad litem to represent the children, the guardian made no attempt to establish the desires of either boy, and neither was called as a witness.

### (B) Emotional and Physical Needs

There was testimony from three witnesses that Grant was very happy during the two summers he spent with his father, and that he cried when he had to leave and return to his mother. His mother testified that Grant was very happy to get home. She said he came home looking pale, anemic and with dark circles under his eyes. She testified "I think it would be too much emotionally for them to spend time too far away from home with someone who is a total stranger to them." The boys apparently had no emotional problems as a result of their father's visit in October, 1976. It appears that Mr. Aldridge is able to provide for the boys' physical needs in the future, and the trial Court, in its order, provided that the children's right to inherit from their natural father was terminated. See Sec. 15.07, Tex.Family Code Ann. But who can say with certainty that sometime in the

future support might not be needed from the natural father, as it has in the past. We have no doubt that having the boys leave a stable home to visit a person they seldom see can cause some emotional problems. But will not similar problems develop as the boys grow older and begin to wonder about their father and paternal grandparents and their station in life?

### (C) Emotional and Physical Danger

We believe the record reflects a concern for these boys by all parties, including the natural parents, the stepfather and all grandparents. No physical danger or great emotional danger appears from the record we have reviewed.

### (D) Parental Ability

We believe those seeking custody, both Mr. and Mrs. Aldridge, are qualified and able to raise these boys and there is nothing in the record to show otherwise.

### (E) Programs to Promote Child's Best Interest

The record is silent on this issue other than showing that the boys are enrolled in school. The record is void of evidence on their school performance. It does not reflect whether they attend church or not, or whether they belong to the Boy Scouts or other similar organizations.

### (F) Plans for the Children

Nothing is shown by the record other than usual activities of boys attending school.

### (G) Stability of the Home

The social report prepared by the County Sheriff reflects a stable home where both boys are happy and well adjusted. The stepfather is engaged in farming and has an annual income of approximately $30,-000.00 per year. The report concludes that this is a "close-knit family," and that Mr. and Mrs. Aldridge are good parents. The report recommends the adoption be granted.

### (H) Parents' Acts or Omissions Adversely Affecting Parent-Child Relationship

The record does not indicate any conduct which would adversely affect the existing parent-child relationship. Certainly, Dr. Dressler is not shown to be an unfit parent.

### (I) Excuse for Acts or Omissions of a Parent

As noted earlier, Dr. Dressler would excuse his failure to pay support on the conduct of his ex-wife in denying him custody of his son as provided for in the divorce decree. Certainly, this is not a valid legal excuse, but may be described as an often used excuse, with some reasonable basis.

As we noted in *Brokenleg v. Butts*, 559 S.W.2d 853 (Tex.Civ.App.—El Paso 1977, writ ref'd n. r. e.), some of these issues are as much concerned with questions of custody as they are with the issue of termination of the parent-child relationship. In doing so, we made note of the holding in *Wiley v. Spratlan*, supra, that there is a substantial difference between suits for conservatorship, possession and support of children, and those to terminate a parent-child relationship, and the difference justifies the caution with which Courts have characteristically considered termination cases. In the 1977 "Advanced Family Law Course," Donald R. Royall discusses the *Wiley, Holley* and *Schiesser* cases and says "The Supreme Court, apparently sensing the constitutional dimension of the parent-child relationship, reversed each of these cases, relying upon a strict and literal construction of the statute in each case in favor of the parent, and the lower courts are catching on." Advanced Family Law Course, 1977, p. C–19. We reached a similar result in *Brokenleg*, supra.

There can be no contention and there is no evidence that Dr. Dressler's acts or conduct adversely affected Jeffrey, because he has never had custody or visitation rights with him by reason of the divorce decree and his mother's conduct. While there is authority for termination of parental rights as to some children in a family and not others, this is not a case where the result

should be different for different children. See *Moreland v. State,* 531 S.W.2d 229 (Tex. Civ.App.—Houston [1st Dist.] 1975, no writ). We believe that under the facts in this case the same result should be reached as to both boys.

One valid reason for termination of parental rights in this case, that did not exist in *Wiley, Holley, Schiesser* or *Brokenleg,* is the application for adoption by a stepparent. This Court was unwilling to conclude that it was in the best interest of the child to terminate all parental rights of the mother in *Brokenleg,* where the father had voluntarily relinquished his rights and when no one sought to adopt the child and assume parental obligations. In this case, the stepfather seeks both the privileges and responsibilities of being a parent for two young boys. In what is admittedly a close case, we believe that this makes the difference in determining what is the best interest of the children. This, along with factors (D) and (G) above, cause us to affirm the decision of the trial Judge who saw the parties and heard the evidence.

The Appellant's three points of error, asserting that there is no evidence and insufficient evidence to support the trial Court's order of termination and adoption and that such findings are against the great weight and preponderance of the evidence, are all overruled. The judgment of the trial Court is affirmed.