**Marie Reyna COMPASANO, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 17221.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Nov. 16, 1978.

Rehearing Denied Dec. 14, 1978.

Michael A. Petersmith, Houston, for appellant.

Vincent J. Rizzo, Jr., James C. Henry, Houston, for appellee.

COLEMAN, Chief Justice.

Marie Reyna Compasano appeals from an order of the court terminating the parent-child relationship of appellant and her child, Rosemary, and appointing Harris County Welfare as managing conservator of the child. The judgment will be reversed.

In 1975 the parent-child relationship between Raymond Compasano and his daughter, Rosemary, was terminated when he failed to appear at a termination proceeding. The court found on that occasion that there was insufficient evidence for termination of the parent-child relationship between Rosemary and her mother, Marie Reyna Compasano. The Harris County Child Welfare Unit was appointed managing conservator of the child and the termination proceeding as to Marie was recessed for six months. At a hearing held in January, 1976, the court terminated the parental rights of Marie, but subsequently granted a motion for new trial. In October, 1977, after a trial to the court without a jury the court terminated the parental rights of Marie Compasano, and this appeal resulted.

Rosemary Compasano was born April 3, 1973, and shortly thereafter her parents separated. Marie then moved in with her mother, quit school while in the eleventh grade, and started working to support herself and Rosemary. Raymond never contributed to the support of the child. Prior

to November 15, 1974, Marie took care of the child except while she was working at which time either her mother or sister kept Rosemary.

On November 15, 1974, while Rosemary was at her grandmother's house, her uncle who lived in the same house called Child Welfare and reported that appellant had abandoned the child with him and his mother. He requested Child Welfare to take Rosemary into custody. As a result of this call Child Welfare did take the possession of Rosemary and has had her in its custody since that date. Marie testified that she went to Corpus Christi with her brother on that date and that before she left she secured her mother's consent to care for the child. At this time Marie was eighteen years of age, unemployed, and lived with a female friend.

When the original petition to terminate the parent-child relationship was filed on December 4, 1974, the petition recited that the mother of the child was Mary Reyna and the father of the child was Raymond Compasano. Grounds for termination of the parent-child relationship were alleged including an allegation that the father had failed to support the child in accordance with his ability during a period of one year ending within six months of the date of filing of this petition. It was not alleged that the mother had failed to support the child. A first amended petition was filed on October 5, 1977, in which for the first time it was alleged that Mary Reyna had failed to support the child in accordance with her ability during a period of one year ending within six months of the date of the filing of the petition. One other ground was alleged in the petition, but it was abandoned during the trial.

The burden rested on the State to present evidence sufficient to support findings that Marie failed to support the child in accordance with her abilities during a period of one year ending within six months of the date of the filing of the petition and that termination is in the best interest of the child. Texas Family Code Sections 15.-02(1)(F) and 15.02(2). Under the facts of this case the period of non-support must encompass twelve consecutive months between April 5, 1976, and October 5, 1977.

During this period of time the record reflects that Marie worked from May, 1976, until January, 1977. During this time she earned approximately $84.00 per week. During this same period of time she was living with Manuel Arrendondo. Manuel was her sole source of support from January, 1977, until August, 1977. In August, 1977, Manuel found it necessary to go to Mexico to care for his sick parents. At that time Carmen Aguilar moved in with Marie and provided funds for her support. There is evidence that Marie was physically able to work, and that had she desired a job she could have secured one.

Manuel earned between $100.00 and $150.00 a week, and contributed substantially to the support of his family in Mexico. While they lived together Manuel and Marie pooled their money and paid their living expenses out of the common fund. Marie has an older son who has always lived with her mother. She contributed money for his support when her mother asked for it. During this entire period Harris County Child Welfare was the managing conservator of the child, Rosemary. Prior to the first decree terminating Marie's parental rights a Child Welfare caseworker counseled Marie. One of the caseworkers testified that soon after Child Welfare took custody of Rosemary she talked to Marie and explained to her the policy regarding foster care and "the legal situation" surrounding the case. She testified that from the beginning she told Marie that she had to demonstrate to the Child Welfare Unit and "to the court that she had a stable home and adequate income to take care of herself and the child." She testified that she talked to Marie about employment and whether she could support Rosemary. She told Marie that she had a duty to support her child and that Child Welfare would accept payments. She never directly asked Marie to contribute to the child's support, and at the time the court appointed Child Welfare as the managing conservator no

support payments were required. Marie testified that she knew that she had a duty to support her child, but that she did not know that she was supposed to send payments to Child Welfare.

■ A judgment terminating a parent-child relationship under Section 15.02 of the Family Code cannot rest solely upon the trial court's determination of what would be in the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367 (1976). As a result, in a case where the evidence might conclusively demonstrate that the best interest of the child required termination of the parental rights of one of its parents, the burden still remains on the State to prove one of the grounds set out in the Code such as failure to support for the requisite period. The Supreme Court of Texas has determined that the relevant period of non-support commences on the date that the fact of non-support first exists and it must then continue for the period of one year. *Cawley v. Allums*, 518 S.W.2d 790 (Tex.1975); *Wiley v. Spratlin*, 543 S.W.2d 349 (Tex. 1976). In both of these cases, however, the court found that it was not possible to have a twelve month period after ascertaining the date on which the failure to support began. Justice Johnson filed a dissent in *Cawley v. Allums* in which he said:

" . . . the effect of the majority's decision is to require that there be two complete and continuous years of *no* support before an adoption can be entered without the consent of the natural parent[s]."

Justice McGee dissented in *Wiley v. Spratlin* in which he stated:

" . . . is complete nonsupport for one year required before termination will be allowed? Such would seem to be the intention of the majority as their opinion states: 'Just as two years did not mean nineteen months in *Cawley*, so also one year does not mean eight months in this case.' Thus, applying the reasoning of the majority to the single yearly payment hypothetical, termination would never be allowed as 'one year does not mean eleven months.'"

In this case no support payments were made during the applicable period of twelve consecutive months. The question with which we are concerned is whether or not Marie had the ability to make payments during those twelve months. The evidence reflects that she did have such ability from May, 1976, until she was fired from her job in January of 1977. During this period of time she earned approximately $84.00 per week. Manuel Arrendondo was contributing to Marie's support. Whether or not Marie had the right to apply Manuel's funds in payment of her obligation to support her daughter, it is uncontroverted in the record that she have the use of a portion of his funds during the period for her support. As a result, she had greater financial ability to contribute some sum each month to the support of her daughter from her own funds.

Marie did not work after January 1977. For some period of time she did continue to receive support for herself from Manuel. There is nothing in the record to reflect that Manuel would have permitted her to apply his funds to the support of her daughter. There is no evidence that she had any ability to support her child after August of 1977.

The question which confronts us is somewhat different from the questions faced by the Supreme Court of Texas. Here Marie failed to pay support for a period of several months when she had an ability to pay support in some amount. Thereafter she made no support payments, but she had no funds of her own with which to make such payments and had no income. The question before us is whether the lack of income after the period of non-support has begun terminates the period of failure to support "in accordance with her ability" as would payments made to the Harris County Welfare Unit. In *Brokenleg v. Butts*, 559 S.W.2d 853 (Tex.Civ.App.—El Paso 1977, n. r. e.), the court stated that the evidence was without dispute that during the entire period prior to the filing of the petition for termination of parental rights the mother made no contribution to support of the

child. There was evidence that the mother was employed for various periods of time prior to the date on which the petition was filed. The court stated that there was no evidence that she had any ability to support her child for a period of twelve consecutive months in accordance with her ability to do so as required by Section 15.02(1)(F). In this case the court also found that the trial court erred in its determination that the best interest of the child required termination of the parent-child relationship.

In *McGowen v. State*, 558 S.W.2d 561 (Tex.Civ.App.—Houston [14th Dist.] 1977, n. r. e.), another termination case, there was no dispute about the failure of the parents to pay child support for their children during a period of one year which ended within six months of the date of the filing of the first amended petition for termination. The only dispute concerned the ability of the appellant to pay support during that period. In that case the parents had no income during one month of the period and they were under a court order to make payments. The opinion states:

" . . . We think that the appellants' statements reflect a conscious disregard of their duty to provide support. Inability to provide support during some months will not interrupt the running of the one year period if no effort is made to pay support during other months in which there is a clear ability to pay. . . . "

In *McGowen* the evidence reflects that the parents' total gross income during the pertinent period was at least $14,000.00, and that they were making purchase payments of $147.50 per month on a house that they neither occupied nor rented. During the same period they had contracted with an attorney to represent them and had paid in excess of $3,000.00 attorney's fees. One of the children was hospitalized in a nursing facility for profoundly brain damaged children. The mother was a member of the United States Air Force, and was entitled to obtain for her dependents free on-base medical treatment and very liberal compensation for off-base medical care. There is no evidence that she furnished medical treatment to this child. There was a jury finding that the parents failed to support their minor children in accordance with their abilities and the Appellate Court affirmed the judgment of the court terminating their parental relationship with the children. The statement quoted was not necessarily approved by the Supreme Court of Texas in refusing a writ with the notation "n. r. e.". In *Brokenleg v. Butts*, supra, the appeal was from a judgment terminating the parental rights of the parents and the Appellate Court reversed. That portion of the court's opinion relating to support was not necessarily approved by the action of the Supreme Court in refusing a writ of error with the notation "n. r. e.", since the judgment could have been sustained by reason of the finding on the issue relating to the best interest of the child.

■ Marie was a young girl at the time this action was instituted. Significance must be attached to the fact that there was no court order setting the amount of support which she was able to contribute and that there was no demand for support payments. During several months of the one year period in question Marie was without funds of her own and dependent on friends for her own support. The trial court would have been justified under the record in determining that this condition existed because Marie made a conscious choice not to work. Nevertheless, it cannot be said that she failed to support the child in accordance with her ability during that period.

■ We conclude that in order to support a judgment terminating the parental rights there must be evidence establishing a date on which Marie first failed to support her child in accordance with her ability and that this condition endured for a subsequent twelve month period. The State failed to carry this burden. The judgment must be reversed.

■ In view of this holding we do not discuss in detail the challenge to the court's finding that the best interest of the child required termination of the parental relationship. We have read the Statement of Facts and hold that such a finding is fully supported by the evidence.

The judgment terminating the parent-child relationship is reversed. That portion of the judgment appointing, Gene Lege, Director of Harris County Child Welfare Unit, managing conservator of the child is affirmed.