

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-24-00880-CV

**IN THE INTEREST OF M.N.R.**, a Child

From the 365th Judicial District Court, Maverick County, Texas
Trial Court No. 24-02-43151-MCVAJA
Honorable Amado J. Abascal III, Judge Presiding

Opinion by:      Velia J. Meza, Justice

Sitting:         Lori Massey Brissette, Justice
                 Adrian A. Spears II, Justice
                 Velia J. Meza, Justice

Delivered and Filed: April 23, 2025

AFFIRMED

Mother appeals termination of her parental rights to M.N.R.[1] The Texas Department of Family and Protective Services (the Department) filed a petition on February 29, 2024 for temporary managing conservatorship and to terminate parental rights. After a bench trial, the trial court signed an order terminating Mother's rights and appointing Father as sole managing conservator. The order includes statutory predicate findings under (D), (E) and finds that termination of Mother's parental rights is in M.N.R.'s best interest. *See* TEX. FAM. CODE § 161.001(b)(1)(D), (b)(1)(E), (b)(2).

---

[1] To protect the identity of the child and persons through whom the child could be identified, we will refer to appellant as "Mother," to the child's biological father as "Father," and to the child by initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8.

On appeal, Mother challenges the sufficiency of the evidence supporting the termination and conservatorship findings. We affirm.

## BACKGROUND

This case began in late December 2023, when M.N.R., then two years old, was hospitalized with injuries to his face. The child's injuries consisted of bruising around both eyes, across the back of his ear, and down his neck to below the shoulder. The child told the Department investigator that "V.G.," Mother's boyfriend, caused the injuries.[2]

Mother[3] and V.G. share responsibility for taking care of M.N.R. According to Mother, V.G. took care of M.N.R. while Mother worked. On the day before M.N.R. was hospitalized, V.G. texted Mother around 3:00 p.m. stating that M.N.R. "fell from the bed." Mother arrived home around 5:00 p.m. and saw M.N.R. "had a bump [on] his forehead." Mother gave the child Tylenol and went to sleep. The next morning, Mother noticed M.N.R.'s eye was "purple" and took him to the hospital in the afternoon. There, medical staff informed Mother the child's injuries appeared to result from abuse.

During the Department's initial interview, Mother claimed M.N.R.'s injuries resulted from a spider bite. Later in the interview, Mother acknowledged the injuries "looked like a beating," but nonetheless claimed the child fell out of bed. After being shown pictures of M.N.R.'s face, Mother believed V.G. hit the child. After the interview concluded, Mother reverted to her explanation that M.N.R.'s injuries resulted from falling out of a bed.

---

[2] The day before trial began, M.N.R., unprompted, repeated that V.G. beat him, causing his injuries.

[3] Mother and Father were married but estranged at the time of trial. Father was deported from the United States after being pulled over for an expired paper license plate and resides in Mexico.

Prior to removal, Mother signed a safety plan which required her to keep V.G. away from M.N.R. by staying at a cousin's house. Mother was given information relating to women's shelters and offered family-based safety services. Mother did not comply with the safety plan.

Mother continued her relationship with V.G. and chose to remain living with him. Janel Maurer, a caseworker for the Department, testified that Mother could have lived with her mother in Mexico. Ms. Maurer testified that V.G. had a history of domestic abuse but gave no further details. Mother told Ms. Maurer that she was financially dependent on V.G. and didn't have another place to live.[4]

Mother continued to believe V.G. did not cause the injuries.[5] Because Mother refused to take the child to San Antonio for access to a translator, M.N.R. was never forensically interviewed regarding the injuries to his face. However, M.N.R. continued to tell Father, his aunt, who took care of M.N.R. during the case, and Department staff that V.G. punched him in the face. Based on its investigation, the Department found the allegation of physical abuse "reason to believe."[6]

M.N.R. was removed on February 29 due to the physical abuse and Mother's lack of cooperation with the safety plan. Considering the evidence presented at trial regarding M.N.R.'s injuries, Mother's rejection of the possibility that V.G. caused the injuries, and Mother's continued relationship with V.G., the trial court terminated Mother's parental rights to M.N.R.

---

[4] Mother disputed this at trial, testifying that she was now financially independent and did not rely on V.G. for a place to stay.

[5] Mother testified at trial that she would end her relationship with V.G. if she believed he hurt M.N.R. Mother justified her belief that V.G. was not the perpetrator based on a security video supposedly showing the bed where M.N.R. fell. The video was not admitted as evidence at trial and the Department raised doubts about the authenticity of the video.

[6] The Department makes a finding of "reason-to-believe" when, "[b]ased on a preponderance of the evidence, [it] conclude[s] that abuse or neglect occurred." 40 TEX. ADMIN. CODE § 707.495(b)(1).

**ANALYSIS**

## 1 Sufficiency of the Evidence

### 1.1 Standards of Review

A suit involving the potential termination of a parent's right to a child is of constitutional import. *See In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (citations omitted). But a parent's rights "are not absolute." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

"[T]he quantum of proof required to support a termination decision differs from the level necessary to support a conservatorship appointment." *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). Specifically, termination requires a showing of clear and convincing evidence while the question of conservatorship is determined by the lower burden of preponderance of the evidence. *See* TEX. FAM. CODE §§ 161.001, 105.005; *see also Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990). As a result, appellate review is more stringent for termination decisions than for those regarding conservatorship. *In re J.A.J.*, 243 S.W.3d at 616 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)); *In re C.H.*, 89 S.W.3d at 25. *In re C.E.*, 687 S.W.3d 304, 308 (Tex. 2024) (per curiam).

### 1.1.1 *Review of Termination: Clear and Convincing Evidence*

Clear and convincing evidence requires proof that will produce in the factfinder's mind "a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007. This heightened standard "guards the constitutional interests implicated by

termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.).

When reviewing the evidence in a parental termination case, we apply the well-established standards associated with both a legal and factual sufficiency review. *In re J.M.G.*, 608 S.W.3d 51, 53 (Tex. App.—San Antonio 2020, pet. denied) (internal quotation omitted) (citation omitted). First, in a legal sufficiency review, we "view the facts in a light favorable to the findings of the trial judge, who heard the testimony, evaluated its credibility, and dealt the closest with the evidence at hand." *In re R.R.A.*, 687 S.W.3d 269, 276 (Tex. 2024) (quoting *In re J.F.-G.*, 627 S.W.3d 304, 315 (Tex. 2021)) (internal quotation omitted). We will not substitute our own judgment for that of the factfinder. Instead, the factfinder is the sole judge of evidentiary weight and credibility, including witness testimony. *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009). And, in terms of evidentiary weight and witness credibility, we will "defer to the [factfinder's] determinations, at least so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)) (internal quotation marks omitted).

In our review, we "must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). While we will disregard all evidence contrary to a factfinder's determination if "a reasonable factfinder could have disbelieved or found it to have been incredible," we will not disregard undisputed evidence even if it does not support the trial court's finding. *Id.*; *In re C.E.,* 687 S.W.3d at 308.

In our factual sufficiency review, we consider the entire record and determine whether, considering the entire record, any disputed evidence "is so significant that a factfinder could not

reasonably have formed a firm belief or conviction" on the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266.

### 1.1.2   Review of Conservatorship: Preponderance

We review a conservatorship decision for abuse of discretion, reversing only if the decision is arbitrary and unreasonable. *In re J.A.J.*, 243 S.W.3d at 616 (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)); *see also Brokenleg v. Butts*, 559 S.W.2d 853, 854 (Tex. Civ. App.—El Paso 1977, no writ) (reversing termination but affirming appointment of grandparent as child's conservator). "A court acts within its discretion as long as there is some evidence of a substantive and probative character to support its decision on conservatorship." *In re C.F.*, 565 S.W.3d 832, 845–46 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (internal quotation omitted); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam).

## 1.2   Endangerment Grounds

In her first issue, Mother challenges the sufficiency of the evidence supporting the trial court's finding under subsection (D). While Mother purports to challenge subsection (E) in the "issues presented" section of her brief, Mother has not included any such challenge in the body of her brief. TEX. R. APP. P. 38.1(i) (a brief to the court of appeals shall contain, among other things, "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Therefore, Mother concedes the sufficiency of the evidence supporting that ground. *In re B.A.B.*, 124 S.W.3d 417, 420 (Tex. App.—Dallas 2004, no pet.) (holding the failure to adequately brief an issue, either by failing to specifically argue and analyze one's position or provide citations to authorities, waives any error on appeal).

### *1.2.1 Due Process Requires Appellate Review of Endangerment Findings Due to Collateral Consequences Under Subsection (M)*

Ordinarily, "[t]o affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam). Thus, without an intervening principle, it would be unnecessary to review Mother's challenge under subsection (D) to dispose of this appeal. TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

*In re N.G.* established the principle that appellate courts must review findings under subsections (D) and (E), when challenged, even where such review would ordinarily be vitiated by mootness or similar jurisprudential principles. *In re N.G.*, 577 S.W.3d at 235 ("[T]erminating parental rights [to another child under subsection (M)] based on a challenged, unreviewed section 161.0001(b)(1)(D) or (E) finding runs afoul of th[e] principle [of due process and due course of law].") (citing with "*see*" signal U.S. CONST. AMEND. XIV, § 1, TEX. CONST. art. I, § 19). The Supreme Court reasoned the collateral consequences of failing to review such a finding on appeal could affect a future termination proceeding under subsection (M), thus creating a "risk of error" sufficient to outweigh the state's interest in protecting children. *Id*. at 234, 236–37. The Court concluded, "[a]llowing [subsection] (D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court thus violates the parent's due process and due course of law rights." *Id*. at 237.

Following the Supreme Court's pronouncement in *In re N.G.*, the intermediate appellate courts have wrestled with applying the holding to edge cases. *E.g.*, *R.R. v. Tex. Dep't of Family*

*and Protective Servs.*, No. 03-24-00435-CV, 2024 WL 4574360, at *11-12 (Tex. App.—Austin Oct. 25, 2024, no pet.) (mem. op.) (Baker, J., concurring) (expressing doubt that *In re N.G.* requires appellate courts to analyze both endangerment grounds, even if one endangerment ground is supported by the evidence and thus independently sufficient for subsequent termination under (M)).[7]

Most of our sister courts have expressly or impliedly taken the position that due process does not demand review of a second endangerment ground, when one endangerment ground is supported by sufficient evidence. *See, e.g.*, *In re L.R.D.*, No. 01-23-00623-CV, 2024 WL 560668, at *17 (Tex. App.—Houston [1st Dist.] Feb. 13, 2024, no pet.) (mem. op.) (affirming (D), noting potential for future (M) finding is unchanged by refusing to address (E)); *In re C.W.*, No. 02-23-00414-CV, 2024 WL 637264, at *4 (Tex. App.—Fort Worth Feb. 15, 2024, pet. denied) (mem. op.) ("[W]e will address whether the evidence is legally and factually sufficient to prove at least one of the endangerment grounds."); *A.B. v. Tex. Dep't of Family and Protective Servs.*, No. 03-22-00759-CV, 2023 WL 3235814, at *9 n.8 (Tex. App.—Austin May 4, 2023, no pet.) (mem. op.) (affirming (E), refusing to address (D), noting that *In re N.G.* does not require review of both grounds when one is sufficient); *In re A.J.F.*, No. 05-23-00134-CV, 2023 WL 4247372, at *6 (Tex. App.—Dallas June 29, 2023, pet. denied) (mem. op.) ("[W]e must determine whether termination is supported under either or both of those [endangerment] grounds because of their potential collateral consequences on the parent's rights to other children."); *In re F.S.*, No. 06-24-00048-CV, 2024 WL 4447254, at *5 n.9 (Tex. App.—Texarkana Oct. 9, 2024, no pet.) (mem. op.)

---

[7] *See also In re M.A.J.*, 612 S.W.3d 398, 409 n.16 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (finding legally sufficiency evidence of endangerment ground, but refusing to review factual sufficiency where termination is otherwise reversed); *In re M.P.*, 618 S.W.3d 88, 110–11 (Tex. App.—Houston [14th Dist.] 2020) (after affirming termination based on subsection (O), remanding to trial court because evidence supporting endangerment grounds was factually insufficient), rev'd, 639 S.W.3d 700 (Tex. 2022) (per curiam) (holding remand was unnecessary because appellate court could modify the judgment to remove the endangerment findings).

(affirming (E), refusing to address (D)); *In re R.D.*, No. 07-23-00083-CV, 2023 WL 4488268, at *5 (Tex. App.—Amarillo July 5, 2023, no pet.) (mem. op.) (in *Anders* context, affirming (E) without addressing (D)); *In re L.W.R.L.*, No. 09-24-00256-CV, 2025 WL 242937, at *15 (Tex. App.—Beaumont Jan. 16, 2025, pet. denied) (mem. op.) ("If evidence is sufficient as to one of these [endangerment grounds], it will not be necessary to address the other predicate grounds."); *In re B.S.*, No. 10-24-00326-CV, 2025 WL 924692, at *5 (Tex. App.—Waco Mar. 27, 2025, no pet. h.) (mem. op.) (after affirming termination under subsection (E), refusing to address challenge to subsection (D)); *In re M.S.*, No. 11-19-00132-CV, 2019 WL 4924903, at *6 (Tex. App.—Eastland Oct. 4, 2019, no pet.) (mem. op.) (affirming (E), refusing to address (D)); *In re P.W.*, 579 S.W.3d 713, 728 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (affirming (E), refusing to address (D)).

And the remaining courts appear to have taken the opposite position. *See, e.g., In re K.G.*, No. 13-24-00155-CV, 2024 WL 3898304, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 22, 2024, no pet.) (mem. op.) ("The Texas Supreme Court has held that, regardless of whether other grounds for termination are unchallenged on appeal, an appellate court must always review issues alleging the evidence was insufficient to support findings of endangerment under parts (D) or (E)."); *In re S.R.S.*, No. 08-24-00038-CV, 2024 WL 3471213, at *3 (Tex. App.—El Paso July 19, 2024, no pet.) (mem. op.) ("[B]ecause termination of a parent's rights under paragraphs (D) and (E) may later affect the parent's rights to other children, an appellate court must always review the sufficiency of the evidence under these two grounds when they are challenged."); *In re S.A.*, 665 S.W.3d 59, 69 (Tex. App.—Tyler 2022, pet. denied) (mem. op.) (addressing (D) and (E) even where parent did not challenge termination under those subsections).

Different panels of our court have similarly wrestled with whether we may simply find sufficient evidence of a single endangerment ground. *See In re F.S.F.*, No. 04-24-00125-CV, 2024 WL 3800662, at *12–13 (Tex. App.—San Antonio Aug. 14, 2024, no pet.) (mem. op.) (Rios, J., concurring) (recognizing inconsistency among panel opinions as to whether both findings must be analyzed, when challenged). More often, our practice has been to analyze both grounds, when challenged. *See id.* at *12.

However, the present case is distinguishable from prior cases in which our court applied *In re N.G.*: Mother challenges one endangerment finding without challenging the other. Mother is thus equally at risk to future termination under section (M),[8] irrespective of whether we review her challenge to subsection (D). *See J.B.M.H. v. Tex. Dep't of Family and Protective Servs.*, No. 03-22-00661-CV, 2023 WL 2920315, at *8 (Tex. App.—Austin Apr. 13, 2023, pet. denied) (mem. op.) (observing the "collateral consequences are identical whether there is a (D) finding alone, an (E) finding alone, or both a (D) and an (E) finding").

Other courts presented with the same circumstances—where there are no collateral consequences implicated by appellate review of an endangerment ground due to a failure to challenge the ground on appeal—have held *In re N.G.* does not compel review of the challenged ground. *See C.W. v. Tex. Dep't of Family and Protective Servs.*, No. 03-19-00654-CV, 2020 WL 828673, at *2 (Tex. App.—Austin Feb. 20, 2020, no pet.) (mem. op.) ("[W]e need not review Father's challenge under Subsection (D) because the potential collateral consequences are triggered separately by the Subsection (E) portion of the trial court's judgment, which he does not challenge."); *see also In re A.A.*, No. 10-24-00084-CV, 2024 WL 3717427, at *1 (Tex. App.—

---

[8] The Legislature amended the statute in 2021 to limit a parent's exposure to termination under (M) following a (D) or (E) finding to one year following "the date the department . . . was granted managing conservatorship of a child in the case that resulted in termination . . . based on a finding [under (D)] or [(E)]." Act of May 28, 2021, 87th Leg., R.S., Ch. 831, § 1, 2017 Tex. Gen. Laws 2040, 2040 (codified at TEX. FAM. CODE § 161.001(d-1)).

Waco Aug. 8, 2024, pet. denied) (mem. op.) (refusing to address challenged (D) finding in light of unchallenged (E) finding); *In re R.S.*, No. 01-20-00126-CV, 2020 WL 4289978, at *6 (Tex. App.—Houston [1st Dist.] July 28, 2020, no pet.) (mem. op.) (holding appellate court did not need to address endangerment finding because it did not impose any additional collateral consequences).

We hold that Mother's failure to challenge subsection (E) waives any error as to subsection (D). *See In re N.G.*, 577 S.W.3d at 232 (observing long-standing principle that only one predicate ground, along with a best interest finding, is necessary for parental termination). Reviewing a challenged endangerment ground under these circumstances may well be *prudent*, depending on the circumstances and the interrelatedness of evidence supporting the endangerment grounds, but due process does not *require* that review when there are no "collateral effects of termination on those grounds." *See In re M.P.*, 639 S.W.3d at 702 (clarifying *In re N.G.*).

### 1.2.2 Conclusion

We decline to review the sufficiency of the evidence supporting subsection (D) in this case. Mother's first and second issues are overruled.

### 1.3 Best Interest

Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in the child's best interest.

"[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE § 153.131(b)). We strictly scrutinize termination proceedings in favor of the parent. *In re N.L.D.,* 412 S.W.3d 810, 822 (Tex. App.—Texarkana 2013, no pet.). And because of the strong presumption in favor of maintaining the parent-child relationship and the due process implications of terminating a parent's rights to her minor child without clear and convincing evidence, "the best

interest standard does not permit termination merely because a child might be better off living elsewhere." *In re J.G.S.,* 574 S.W.3d 101, 121–22 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (internal quotations omitted); *see In re W.C.,* 98 S.W.3d 753, 758 (Tex. App.—Fort Worth 2003, no pet.). Termination of parental rights should not be used as a mechanism to merely reallocate a child to better and more prosperous parents. *Id.*

In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should consider the relevant factors set out in section 263.307(b). *See* TEX. FAM. CODE § 263.307(b). In addition to these statutory factors, in considering the best interest of the child, a factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *In re C.H.*, 89 S.W.3d at 27; s*ee In re E.A.R.*, 672 S.W.3d 716, 722 (Tex. App.—San Antonio 2023, pet denied) (noting that a best interest finding does not require proof of any particular factor). "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re E.A.R.*, 672 S.W.3d at 722 (quoting *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.)). However, the presence of scant evidence relevant to each factor will generally not support a finding that termination of parental rights was in the child's best interest. *In re R.H.*, No. 02-19-00273-CV, 2019 WL 6767804, at *4 (Tex. App.—Fort Worth Dec. 12, 2019, pet. denied) (mem. op.); *In re A.W.,* 444 S.W.3d 690, 693 (Tex. App.—Dallas 2014, pet. denied).

Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct. *In re*

*E.A.R.*, 672 S.W.3d at 722 (citing *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied)). The predicate grounds for termination may also be probative of best interest. *Id.* (citing *In re C.H.*, 89 S.W.3d at 28). In parental-termination proceedings, the Department's burden is not simply to prove that a parent should not have custody of her child; the Department must meet the heightened burden to prove, by clear and convincing evidence, that the parent should no longer have any relationship with her child whatsoever. *See In re K.N.J.,* 583 S.W.3d 813, 827 (Tex. App.—San Antonio 2019, no pet.); *see also In re J.A.J.,* 243 S.W.3d 611, 616–17 (Tex. 2007) (distinguishing conservatorship from termination).

### *1.3.1   Holley factors*

We begin by detailing evidence relevant to each *Holley* factor. At the outset, we note that the trial court did not order (and the Department did not seek) termination of Father's rights. Instead, Father was awarded sole managing conservatorship following termination of Mother's parental rights.

**Desires of the Child.** M.N.R. was three years old at the time of trial. The trial court heard that M.N.R. is strongly bonded to both Mother and Father.

**Present and Future Physical and Emotional Needs.** After recovering from his injuries, M.N.R. was described as a healthy three-year-old child. Both Mother and Father testified they have the means to properly care for him.

**Emotional and Physical Danger to the Child Now and in the Future.** Mother has conceded the legal and factual sufficiency of the evidence supporting the trial court's subsection (E) finding. Thus, the evidence of Mother's endangerment of the child before and after removal may be considered as probative of best interest. *See In re E.A.R.*, 672 S.W.3d at 722. It is undisputed that V.G. was the primary caregiver of M.N.R. while Mother worked. Mother testified

she noticed M.N.R.'s eye swell after she arrived home from a work shift. Moreover, the child repeatedly told others that he was hit or punched by V.G. When M.N.R. was shown picture of V.G., he "kind of went into a fetal position . . . [h]e looked scared and just kind of shrugged and turned himself in towards his mom's . . . arms." Another Department employee described M.N.R. as "deathly afraid of" V.G.

Mother admitted at trial to being in a relationship with V.G. Mother testified that V.G. does not live with her. She explained that he helps her with the house and stated, "honestly, I don't think [V.G.] was the one to – to – that did the injuries to [M.N.R.]." In her testimony, Mother repeated her belief that M.N.R. was coached into accusing V.G.

**Parental Abilities and Programs Available.** Both Mother and Father testified they would take advantage of any available community resources. Mother, however, refused to participate in any services relating to domestic violence prevention.

**Stability of the Home or Proposed Placement.** Father is employed, has a home, and is availing himself of social services in Mexico. Similarly, Mother is employed and has a home in Eagle Pass. There was no evidence presented that Mother's new home is unsafe, aside from Mother's continued relationship with V.G.[9] Mother denied any domestic violence during her relationship with V.G. However, M.N.R. described an incident of domestic violence to his aunt: he witnessed V.G. pulling Mother's hair, and, when M.N.R. approached him, V.G. shoved the child away. Mother testified that she is aware V.G. has a history of domestic violence with a former partner but believes the charges have been dismissed for lack of evidence. As past is often prologue, the trial court could reasonably infer that Mother would allow V.G. unsupervised access

---

[9] In addition to Mother's admission that she was still in a relationship with him, V.G. attended court hearings and trial in this case.

to M.N.R., especially given Mother's obstinance in recognizing V.G. as a perpetrator of physical abuse. *See In re E.A.R.*, 672 S.W.3d at 722.

**Plans for the Child.** Mother stated her desire to move to San Antonio, where her aunt is available to support her. The Department recommended termination of Mother's parental rights and appointment of Father as sole managing conservator.

**Additional Considerations.** M.N.R. is Mother's only child and Mother has no Department history. The primary reason for the Department's recommendation was Mother's continued relationship with V.G. M.N.R.'s aunt summarized the danger to M.N.R.: Mother "is a good mom . . . but staying with that man [V.G.] is not good." The aunt described M.N.R. as afraid of V.G.

### 1.3.2 Conclusion

It would not have been lost on the trial court that Mother's explanations for the child's injuries—a spider bite or falling out of bed—appeared implausible. Instead, Mother clung to the mere possibility that M.N.R. had been coached into accusing V.G., ignoring the contrary physical evidence and M.N.R.'s unprompted outcries. The trial court heard Mother admit to continuing her relationship with V.G., stating she would discontinue the relationship only if she were convinced that V.G. hurt M.N.R.

We "must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.*, 96 S.W.3d at 266. Considering her unwillingness to believe V.G. injured her child and Mother's steadfast refusal to take preventative action regarding V.G.'s access to M.N.R., the trial court could have reasonably formed a firm belief or conviction that termination of her parental rights was in M.N.R.'s best interest. *See In re E.A.R.*, 672 S.W.3d at 722. We similarly conclude that the disputed evidence, namely, Mother's claim that

M.N.R. was coached into accusing V.G. of physical abuse, is not so significant that the trial court could not have formed a firm belief or conviction that termination was in the child's best interest. *See In re J.F.C.*, 96 S.W.3d at 266. Therefore, the evidence is legally and factually sufficient to support the trial court's best interest finding. *See In re J.O.A.*, 283 S.W.3d at 344-45.

We overrule Mother's third issue.

## 1.4 Conservatorship

In her final issue, Mother challenges the portion of the trial court's order appointing Father as sole managing conservator, arguing that if termination is reversed, she should be granted conservatorship.

Conservatorship decisions are reviewed under the abuse of discretion standard. The primary consideration regarding conservatorship is always the child's best interest. *In re A.C.*, 394 S.W.3d 633, 644 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing TEX. FAM. CODE § 153.002). However, we already detailed the evidence relevant to the trial court's best interest determination under the termination statute, holding such evidence was sufficient. We cannot say the trial court abused its discretion by appointing Father as managing conservator. *See In re J.A.J.*, 243 S.W.3d at 616. Mother's final issue is overruled.

### CONCLUSION

Having concluded the evidence is legally and factually sufficient to support the trial court's findings challenged on appeal, we affirm the trial court's order terminating Mother's parental rights.

Velia J. Meza, Justice