**Thomas A. McADOO, Appellant,**

v.

**Luther V. SPURLOCK, et ux., Appellees.**

No. 13381.

Court of Appeals of Texas, Austin.

April 22, 1982.

S. Gail Parr, Staff Counsel for Inmates, Huntsville, for appellant.

George E. Shaffer, Shaffer & Jones, Waco, for appellees.

POWERS, Justice.

The trial court judgment terminates the parent-child relationship between appellant and his son, based upon the provisions of Texas Family Code § 15.02(1)(B) (Supp. 1982). Appellees, the child's maternal grandparents, initiated the action and pleaded that subsection of the Code as the sole basis for termination. The child's nat-ural mother, appellant's former wife, voluntarily relinquished her parental rights in the manner provided by § 15.03 of the Code.

The provisions of § 15.02(1)(B) comprise one of eleven categories of parental misconduct or other action which may justify terminating a parent-child relationship, provided termination is "in the best interest of the child," an additional requirement set forth in § 15.02(2).

█ Appellant's first point of error contends the evidence is legally and factually insufficient to support the specific fact findings made by the trial court, and required by § 15.02(1)(B), namely: (1) appellant voluntarily left the child alone or in the possession of another not the parent; (2) without expressing an intent to return; (3) without providing adequate support for the child; and (4) remained away from the child for at least three months. We are enjoined to scrutinize strictly the evidence in cases such as this to determine if clear and convincing evidence supports the findings just enumerated. *Schiesser v. State*, 544 S.W.2d 373 (Tex.1976); *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.1976). We will consider first appellant's challenge to the factual sufficiency of the evidence.

The record reveals that the child was born to appellant and his wife, before their divorce, on December 16, 1976. Appellees attempted to establish that the elements required by § 15.02(1)(B) occurred in the ten months between the child's birth and appellant's arrest by law enforcement officers in Temple, Texas, on October 17, 1977. Appellant has been confined since that day, first in a local jail and, subsequently, in the Texas Department of Corrections where he is serving a ten year sentence for burglary. We need not, in view of our holding below, consider whether appellant's confinement in prison may be considered in calculating the three months he "remained away" from his child.[1]

---

1. The record establishes that appellant's former wife, the child's natural mother, had been arrested at an unspecified time and was also serving a sentence in the Texas Department of Corrections at the time of trial. While the date her incarceration began is unknown, the record establishes that it began sometime after appellant's arrest on October 17, 1977.

Evidence favorable to the trial court's findings is found primarily in the testimony of the child's maternal grandmother, an appellee before this Court. She testified substantially as follows: she and her husband wished to adopt the child; the natural parents gave appellees "care or control" of the child when he was two weeks old; appellees have generally supported the child since then; the grandmother would take the child to appellant and his wife on occasion so they could see him; and there were only two occasions when the child had been with his natural parents, and not with the appellees, for substantial periods of time. The grandmother did not specify the first occasion to which she referred, but other witnesses testified that the child was with appellant and his wife for about a month in March 1977. The grandmother did describe the second occasion to which she referred as being a trip to Nebraska by appellant, his wife, and child in September 1977. She testified the trip lasted about a month but she "didn't give them [appellant and his wife] permission to take it [the child]." Appellant was arrested shortly after his return from Nebraska to Temple.

The grandmother testified that on other unspecified occasions she would deliver the child to appellant and his wife on their request that she do so. This normally occurred on the weekends and the child would usually be with his natural parents for a day or two. The grandmother did not identify the dates of those occasional visits.

To establish appellant's failure to express an intent to return, after leaving the child with the grandmother, appellees rely upon the following testimony by the grandmother, given in response to a question addressed to her by the trial judge:

Q. Did he [appellant] tell you that he wanted you to adopt it [the child] or what?

A. No. He told me that he was going to give it [the child] to me by word and that he was never going to take it away from me.

The grandmother stated that appellant made the statement when the child was about three months old, but she did not connect the statement to any action by the appellant in leaving the child with her. One should note that the child was three months old on March 16, 1977, and other witnesses testified without contradiction that the child was with the natural parents for about a month in March 1977. Appellees contend, however, that the statement by appellant is tantamount to a failure to express an intent to return.

◼ We are asked, then, to substitute for the statutory requirement, a parent's omission to state his intent to return, patently tied to a specific instance of the parent's leaving his child with one not a parent, the affirmative statement made by appellant that he was going to give the child to the grandmother "by word" and never take the child from her. This statement appears to be nothing more than a promise of a future voluntary relinquishment of parental rights inconsistent with the formalities wisely incorporated by the legislature in § 15.03 of the Code to accomplish such relinquishment. So far as § 15.02(1)(B) is concerned, however, the statement is meaningless: (1) because the statement was, under all the evidence, made at a time when appellant had possession of the child, which continued thereafter for some unspecified length of time; (2) the evidence does not connect the statement with appellant's leaving the child with appellees.

Appellant testified that in the three months immediately following the birth of the child, he, his wife, and the child lived with appellant's mother in Temple, Texas. They then moved to the home of appellant's brother, following which appellant and his wife separated, the wife and child moving into the grandmother's home "for a month or two." Appellant and his wife reconciled. They and the child lived with appellant's sister for "three or four weeks," separated again, and united again for the purpose of going to Nebraska. After returning from Nebraska, appellant, his wife, and their child lived with appellant's brother until appellant was arrested.

Appellant's brother generally corroborated appellant's testimony, except to say that appellant, his wife, and his child lived with the brother for only a month following the birth of the child, and not two months as claimed by appellant.

Appellant's wife testified the grandmother kept the child periodically in the ten months following his birth. The child was first given to the grandparents when the child was less than a month old. She, appellant, and their child had lived with appellant's brother on two occasions and had lived with appellant's sister on their return from Nebraska. Most importantly, from our view, appellant's wife testified that *she* took the child to the grandmother's home in the face of appellant's wishes to the contrary, and would sometimes retrieve the child at appellant's specific request but on other occasions she would refuse to do so.

In view of the wife's striking testimony that *she* left the child with the grandparents against appellant's wishes, and the insufficiency of evidence showing, as to appellant, the concurrence of all the essential elements of § 15.02(1)(B), we hold the trial court's findings are not supported by clear and convincing evidence and sustain appellant's point of error directed at the factual sufficiency of the evidence.

The record reveals a close attachment between the child and his maternal grandparents, the development of which is consistent, of course, with their lengthy service as foster parents since the child was very young indeed. There is little question that the child has spent most of his young life with his maternal grandparents, interrupted only periodically by episodes of temporary residence with his natural parents. The record contains much evidence that the grandparents have been good parents to the child and that his best interest lies in their adopting him. Nevertheless, the legislature has quite specifically set forth the only kinds of parental abandonment, neglect, abuse or consent which justify the drastic judgment terminating a parent's legal relationship with his child. We may not indirectly extend any such ground by adjusting the evidence and its inferences with the general aim of serving the best interest of the child. We may require nothing less than clear and convincing evidence which specifically and unambiguously establishes each of the express requirements of § 15.02(1)(B), and this record does not contain evidence of that effect and quality. *In re G.M.*, 596 S.W.2d 846 (Tex.1980).

We therefore reverse the judgment of the trial court and remand the cause.