# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00418-CV

**Donna Sue Philipp and Carl Edward Philipp, Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

## FROM THE DISTRICT COURT OF HAYS COUNTY, 428TH JUDICIAL DISTRICT
## NO. 2009-1064, HONORABLE WILLIAM HENRY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Donna Sue Philipp and Carl Edward Philipp appeal the trial court's order concerning conservatorship of their minor child, K.P. The Philipps contend that the trial court erred by failing to dismiss the Texas Department of Family and Protective Services' case. They also complain that the order deviated from the terms of their mediated settlement agreement in various respects, was not supported by legally and factually sufficient evidence in others, and improperly granted an injunction that prohibited Donna Philipp from having any contact with K.P. and prohibited Carl Philipp from talking to K.P. about certain matters. We will modify the trial court's order and affirm it as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

The Philipps adopted K.P. in 2003 from Russia when she was 13 months old. The Texas Department of Family and Protective Services ("the Department") became involved with the

family in early 2009 after receiving a referral alleging that K.P. had been sexually abused by an unknown person. According to the referral, the Philipps took K.P. to Cedar Crest, a facility in Belton, Texas, for evaluation after Donna[1] stated that K.P. presented a danger to her younger sibling, R.P., and had hurt the family pet. In May and June 2009, the Department's caseworkers met with Donna and Carl individually to discuss K.P. The caseworkers learned that because Cedar Crest was not a long-term facility, the parents had transferred K.P. to another facility, Laurel Ridge, for further evaluation and treatment. At that time, the Philipps believed that K.P. might have a mental illness, such as reactive attachment disorder, mood disorder, or bipolar disorder, that would need long term treatment. In June 2009, the Laurel Ridge therapist told the Department caseworker that there was a concern that insurance coverage for the treatment at Laurel Ridge might cease because K.P. was not displaying behaviors associated with these disorders while at the facility. Donna was opposed to having K.P. return to her home due to her concerns for the safety of R.P., herself, and the family dog. On June 24, the Department held a family team meeting with the Philipps, the caseworker, K.P.'s therapist, and a facilitator to attempt to formulate a plan for K.P.'s care that was satisfactory to the Department. The parties were unable to reach an agreement, and the next day the Department filed its original petition for conservatorship and to terminate the Philipps' parental rights to K.P. At that time, K.P. was living at Laurel Ridge. Shortly thereafter, with the Philipps' agreement, the Department was appointed K.P.'s temporary managing conservator. The order stated that the "dismissal date" for the case was June 28, 2010. *See* Tex. Fam. Code Ann. §§ 263.306(11) (West

---

[1] Because Carl and Donna have the same surname, for clarity we will refer to them by their first names.

Supp. 2011) (court shall determine plans, services, and further temporary orders to ensure that final order is rendered before date for dismissal of suit), .401(a) (West 2008) (court shall dismiss suit unless court has commenced trial on merits on first Monday after first anniversary of date court rendered temporary order appointing department as temporary managing conservator or has granted extension).

In late 2009, the court ordered that K.P. be placed with Robin Meyer, her maternal aunt, at Meyer's home in Houston. The Department continued to serve as K.P.'s temporary managing conservator. On June 1, 2010, the court signed an order extending the dismissal date for the case to December 1, 2010 and setting a trial on the merits for November 2, 2010. *See id.* § 263.401(b) (providing that court may retain suit on docket for certain period in certain circumstances). In October 2010, Carl was ordered to pay the Department $1,050 per month as child support for K.P. beginning November 1, 2010. Also in October 2010, counsel for the Philipps filed a motion stating that Donna had had no access to K.P. since July 2010 and requesting that the court enter a temporary order granting her reasonable possession and access to K.P. while the case was pending. On November 9, the parties signed a Mediated Settlement Agreement ("the MSA"). In the MSA, the parties agreed to appoint the Department as K.P.'s permanent managing conservator, the Philipps as parent possessory conservators, and Meyer and her partner, Donna Galaviz, as nonparent possessory conservators. The parties agreed to litigate the issue of the Philipps' access to K.P. With respect to access, the MSA provides: "The parties will litigate this and only this issue on November 23, 2010." With respect to child support, the MSA states that "[t]he prior child

3

support orders shall remain and father shall pay the child support to the Relative Placement (Meyer and Galaviz) for the benefit of the child."

On November 23, the agreed date for the trial on the issue of access, the Department requested that the court coordinator reset the case for December 1. On December 1, the Department, the Philipps, and an attorney appearing as a substitute for K.P.'s attorney ad litem announced ready. The Department called caseworker Erika Gomez, who testified that the parties had entered into the MSA, which was admitted as an exhibit. The Department then asked that the case be recessed and continued to an unspecified future date. Counsel for the Philipps objected to the recess, arguing that because December 1, 2010 was the dismissal date for the case, an order had to be entered by the end of the day or the court would lose jurisdiction over the case. The Department countered that all that was required was that the trial *begin* no later than the dismissal date, not be completed by that date. The court took the objection under advisement, recessed the case, and instructed the parties to obtain the next trial date from the court coordinator.

The trial resumed on January 11, 2011. The trial court heard evidence on the issue of the parents' access to K.P. When the testimony concluded, the Department requested that the court order that Donna have no access to K.P. and that Carl have limited supervised access to her. The trial court ruled that Donna have no contact with K.P. and that Carl have unsupervised access to K.P. from noon to 8:00 p.m. on the first and third Saturdays of the month. The court enjoined Carl from "discussing mother, Central Texas, home in Austin, or other related issues."

Thereafter, the trial court held a hearing on the Department's motion for entry of an order for conservatorship. Counsel for the Philipps objected to a number of the provisions of the

4

proposed order. In May 2011, the court signed an order for conservatorship that appointed the Department as K.P.'s permanent managing conservator, the Philipps as K.P.'s parent possessory conservators, and Meyer and Galaviz as K.P.'s nonparent possessory conservators. The order expressly denied the Philipps access to K.P.'s psychological records and to her medical, dental, psychological, and educational records. It also expressly denied Donna Philipp the right to be designated on K.P.'s records as a person to be notified in case of an emergency. Carl was "specifically ordered to consult with the child's therapist." The order addressed Donna's access to K.P. in two places. In a section titled "Possession and Access," the court ordered that Donna "shall have no contact with the child [K.P.]" In a section titled "Injunction," the court ordered that Donna "is permanently enjoined from having any contact with the child K.P." Carl was given unsupervised access and possession of K.P. on the first and third Saturdays of each month from noon to 8:00 p.m. Carl was also permanently enjoined from talking to K.P. about Donna and about K.P.'s possible residence in Austin, Texas. The order addressed the use and possession of K.P.'s passport, essentially permitting Meyer and Galaviz to apply for and maintain possession of her passport subject to certain requirements, including surrendering it to Carl within ten days of receipt of his notice of intent to travel with K.P. outside the United States during a period of possession, in the event the court ordered possession to Carl that would permit such travel. Carl was also ordered to pay child support in the amount of $1,050 per month beginning December 1, 2010. The Philipps perfected this appeal.

5

**DISCUSSION**

*Issue Three—Dismissal*

We first address the Philipps' third issue, in which they contend that the trial court erred by failing to dismiss the case because the Department did not commence the trial on the merits by December 1, 2010. Section 263.401(a) of the family code provides:

> Unless the court has commenced the trial on the merits or granted an extension under Subsection (b), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court shall dismiss the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child.

Tex. Fam. Code Ann. § 263.401(a) (West 2008). The trial court may, as it did here, extend the deadline for dismissal for up to 180 days, but it must dismiss the suit if the trial on the merits is not commenced on or before the new dismissal date; the trial court may not extend the deadline any further. *Id.* § 263.401(b). Section 263.402 prohibits the parties in a termination suit from extending the dismissal deadline by agreement, but provides that the deadline can be waived:

> A party to a suit under this chapter who fails to make a timely motion to dismiss the suit under this subchapter waives the right to object to the court's failure to dismiss the suit. A motion to dismiss under this subsection is timely if the motion is made before the trial on the merits commences.

*Id.* § 263.402(b) (West 2008). If a timely motion to dismiss is made, the trial court is required to dismiss the suit. *In re Ludwig*, 150 S.W.3d 819, 824 (Tex. App.—Austin 2004, orig. proceeding).

6

In the present case, the final deadline for commencing the trial on the merits was December 1, 2010. The MSA states that the parties agreed that the only issue to be litigated was the Philipps' access to K.P. Thus, the parties contemplated that the trial on the merits would address solely this issue. On appeal, the Philipps argue that the trial court did not actually commence the trial on the merits because it did not receive evidence regarding the issue of access at the December 1 hearing. Instead, the Department called one witness for the purpose of admitting the MSA into evidence and then requested that the court recess the case, which it did.

We may not consider this issue on appeal, however, because the Philipps did not specifically present it to the trial court in a timely filed statement of points. At the time the trial court signed its final order, former section 263.405(i) of the family code provided that "[t]he appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of points on which the party intends to appeal or in a statement combined with a motion for new trial." Act of May 12, 2005, 79th Leg., R.S., ch. 176, § 1, 2005 Tex. Gen. Laws 332, 332, *repealed by* Act of May 5, 2011, 82d Leg., R.S., ch. 176, § 5, 2011 Tex. Gen. Laws 348, 349.[2] Under this section, the appeal in this case is limited to the issues included in a statement filed in the trial court within fifteen days after the judgment was signed. *See In re B.G.*, 317 S.W.3d 250, 251 (Tex. 2010) (with narrow exceptions, family code section 263.405(i) limits appeal to issues included in statement filed in trial court within fifteen days after judgment is signed). The Philipps' statement

---

[2] The Act repealing section 253.405(i) was effective September 1, 2011. The Act provides: "A final order rendered before the effective date of this Act is governed by the law in effect on the date the order was rendered, and the former law is continued in effect for that purpose." Act of May 5, 2011, 82d Leg., R.S., ch. 75, § 5, 2011 Tex. Gen. Laws 348, 349. The order in this case was rendered orally on January 11, 2011, and the written order was signed on May 3, 2011.

of points filed in the trial court does not include the trial-commencement-deadline issue, and therefore we may not consider it in this appeal.

### Issue One—Does the trial court's order deviate from the MSA?

In their first appellate issue, the Philipps challenge various portions of the trial court's order on the ground that they constitute impermissible deviations from the terms of the MSA. First, the Philipps contend that the trial court erred by denying them the right to access K.P.'s psychological records and ordering that Donna Philipp not be named as a person to contact in the case of an emergency involving K.P. The Philipps argue that these orders deviated from the MSA, which did not include any restrictions on the the Philipps' rights, duties, and responsibilities as parent possessory conservators and expressly stated that the only contested issue for resolution at trial was their access to K.P. The family code provides that a mediated settlement agreement, meeting certain statutory formalities, is binding on the parties and requires the rendition of an order that adopts the parties' agreement. Tex. Fam. Code Ann. § 153.0071(e) (West 2008). The trial court has no authority to enter a judgment that varies from the terms of the mediated settlement agreement. *Id.*; *Milner v. Milner*, No. 10-0776, 2012 WL 753681, at *1 (Tex. Mar. 9, 2012) (addressing mediated settlements pursuant to family code section 6.602); *Garcia-Udall v. Udall*, 141 S.W.3d 323, 330-31 (Tex. App.—Dallas 2004, no pet.).[3]

---

[3] Section 153.0071(e-1) of the family code permits the trial court to "decline to enter a judgment on a mediated settlement agreement" if it finds both that (1) a party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decisions; and (2) the agreement is not in the child's best interest. Tex. Fam. Code Ann. § 153.0071(e-1) (West 2008). There is no evidence of family violence in the present case, and even if both conditions were met, the trial court would be permitted only to decline to enter a judgment on the MSA, not to

8

In the present case, the parties did not reach an agreement that the Philipps would not have access to K.P.'s psychological records or that Donna would not be listed as one of K.P.'s emergency contacts. These are rights that the Philipps, as parent possessory conservators, would otherwise have with regard to K.P. unless limited by court order. *See* Tex. Fam. Code Ann. § 153.192 (West 2008) (parent appointed possessory conservator of child has rights and duties provided by subchapter B (§§ 153.071-.076)). The parties did not agree to the limitations imposed by the court's order, nor did they agree that the Philipps' rights and duties as parent possessory conservators generally would be litigated, except with regard to their access to K.P. Consequently, the trial court abused its discretion by modifying the MSA to impose restrictions on the Philipps' rights as parent possessory conservators that the parties did not agree to and that were also not related to the only issue the parties agreed to litigate—access to K.P. We therefore modify the order to delete the portions of the order denying the Philipps access to K.P.'s psychological records and denying Donna the right to be designated on K.P.'s records as a person to be notified in case of an emergency.

The same analysis applies to the Philipps' contention that the court erred in entering orders related to the application for and possession of a passport for K.P. We agree that the MSA does not contain any agreement with regard to K.P.'s passport, nor is the issue related to the Philipps' access to K.P., the only issue the parties agreed to litigate. Consequently, we reform the order to delete section 8, entitled "Passport for child," in its entirety.

modify its terms.

9

Next, the Philipps assert that the trial court erred by ordering that Donna Philipps "shall have no contact with" K.P. The Philipps maintain that the trial court had no authority to render this order because, in their view, it deviates from the MSA. However, the MSA specifically contemplates that the parties would litigate the issue of the Philipps' access to K.P. The term "access" is not defined in the family code. Undefined terms in a statute are given their ordinary meaning unless a different or more precise definition is apparent from the term's use in the statute's context. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "Access" means "an opportunity or ability to enter, approach, pass to and from, or communicate with." Black's Law Dictionary 14 (9th ed. 2009). Donna's right to communicate with K.P., either orally or in writing, falls within the ambit of access to K.P. The parties reached no agreement regarding the Philipps' access to K.P.; consequently, the trial court's order denying Donna the right to communicate with K.P. does not constitute "going behind the signed agreement of the parties" as the Philipps suggest. Nor is it a deviation from the MSA's terms, one of which expressly stated that the parties would litigate the issue of access. Accordingly, we decline to modify the portion of the trial court's order providing that Donna shall have "no contact" with K.P.

Finally, the Philipps complain that the trial court erroneously included in its order provisions related to the payment of child support. The MSA states: "The prior child support orders shall remain and father shall pay the child support to [Robin Meyer and Donna Galaviz] for the benefit of the child." The prior child support order provided that Carl pay $1,050 per month as support for K.P. That order directed that the payments were to be made by him to the Texas Department of Family and Protective Services through the Office of the Attorney General, Texas

10

Child Support Distribution Unit, and then remitted by that agency to the Department for the support of K.P.  The trial court's order states:

> **IT IS ORDERED** that the previously-ordered child support shall remain in effect, and **CARL PHILIPP** shall pay to **[ROBIN MEYER AND DONNA GALAVIZ]** as directed below for the support of the child, **[K.P.]**, the sum of $1,050.00 per month, with the first payment being due and payable on December 1, 2010 and like payment being due and payable on the first day of each month thereafter until further order of the Court.
>
> **IT IS FURTHER ORDERED** that all child support payments are to be made through the Office of the Attorney General, Texas Child Support State Distribution Unit, P.O. Box 659791, San Antonio Texas, 78625-9791 and then remitted by that agency to the Department of Family and Protective Services for the support of the child.

On appeal the Philipps provide no insight into how the trial court's order deviates from the MSA, which contemplated the continuation of the previously ordered child support, paid through the Office of the Attorney General, remitted to the Department, and ultimately passed on to Robin Meyer and Donna Galaviz, with whom K.P. was placed, for her benefit.  We are unable to discern a meaningful difference between the parties' agreement as embodied in the MSA and the trial court's order. Consequently, we decline to modify the portion of the order addressing child support.

***Issue Two—Did the trial court err in granting injunctive relief?***

The trial court's order includes a provision enjoining Carl from "talking to [K.P] about Donna Philipp, or about the child's possible residence in Austin, Texas."  The Philipps contend that there were no pleadings or request for injunctive relief and no evidence to support a finding that in the absence of injunctive relief there was "no adequate remedy available to prevent

11

the actions" enjoined. At the January 11, 2011 hearing, the Department advocated that Carl's visitation be supervised to ensure that he not discuss Donna or the possibility of returning to Austin, issues that, in its view, caused K.P. to become emotionally distraught and impeded her progress. The ad litem was in favor of an injunction prohibiting Carl from having those types of discussions with K.P. The attorney for the Philipps, however, argued that Carl's visitation should continue to be unsupervised. In that context their counsel agreed with the proposed injunction, stating: "I do not believe that these are the type of folks that are going to ignore the Court's order with respect to an injunction. So if that's what it takes, I'll be glad to draw it up for you," and later, "I think injunctive language takes care of the father." The court then orally stated that it was granting Carl unsupervised visitation with K.P., noting that he was enjoining Carl from discussing "mother, Central Texas, home in Austin, other related issues."

It is evident from the record that counsel for the Philipps agreed to the injunction in order to secure unsupervised visitation for Carl. The record reflects that no objection was made to the injunction until the hearing on the motion for entry of the order on April 20, 2011. At that hearing, the Philipps' new attorney, who had replaced the attorney representing them at the trial on the merits, challenged the propriety of the injunction:

| [Counsel for the Philipps]: | I think the problem here, Judge, is that my clients haven't been served with any notice of potentially [sic] regarding an injunction. And I would think that if you're going to impose an injunction, they should at least be given some due process to deal with that. |
|---|---|
| [Counsel for Department]: | Okay. My recollection of the— |

| The Court: | We're talking—I mean, it seems to me that y'all are miscommunicating on this. What should be done and what was done, perhaps, in this case, maybe in every case, are sometimes two different things. As so the question is: What did the Court order? |
|---|---|
| [Attorney Ad Litem]: | Right. "Injunction discussing Mom." My notes say: "Injunction discussing Mom, central Texas, home and Austin related issues. Father consult with therapist, therapist report violation back to the Court." |

The attorney ad litem's notes are consistent with the trial court's oral rulings at the January 11, 2011 hearing on the issue of access. The record reflects that at that hearing counsel for the Philipps agreed to the injunction as to Carl. The order enjoining Carl was rendered when the trial court announced its decision in open court after the parties voiced their consent. *See Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982) (upholding injunction that was granted by court based on parties' consent in open court). Having agreed to the injunction, the Philipps are estopped from now complaining on appeal that the order includes such relief. *In re Dep't of Family & Protective Servs.*, 273 S.W.3d 637, 646 (Tex. 2009) (party estopped from taking position on appeal clearly adverse to position it took unequivocally at trial). Morever, even if this was error, it was invited by the Philipps' counsel. *See Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex. 2005) (party cannot complain on appeal that trial court took specific action that complaining party requested). We overrule the second appellate issue as it relates to the portion of the order enjoining Carl.

By contrast, counsel for the Philipps did not agree that Donna not have contact with K.P. or that she be permanently enjoined from having any such contact. The Philipps challenge these aspects of the court's order, arguing that the trial court abused its discretion by ordering that Donna

13

have no contact with K.P., apparently on the basis that there was no legally or factually sufficient evidence to support the decision to deny her access.

The trial court has broad discretion in determining a child's best interests, and we will reverse a trial court's determination only if it acts unreasonably, arbitrarily, or without reference to guiding principles. *Coleman v. Coleman*, 109 S.W.3d 108, 110 (Tex. App.—Austin 2003, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). We will not reverse merely because we disagree with the trial court's decision. *Id.* When we consider whether a trial court abused its discretion, we do not view the legal and factual sufficiency of the evidence as independent grounds of error but as factors relevant to our assessment. *Ditraglia v. Romano*, 33 S.W.3d 886, 889 (Tex. App.—Austin 2000, no pet.) (citing *Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997, no pet.)); *see also In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g) ("In determining whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) Did the trial court have sufficient information on which to exercise its discretion; and (2) did the trial court err in its application of discretion?"); *Jenkins v. Jenkins*, 16 S.W.3d 473, 478 (Tex. App.—El Paso 2000, no pet.) (same). Because the trial court is best situated to observe witnesses' demeanor and other factors that cannot be discerned from an appellate record, we will generally defer to the court's decision so long as it is supported by substantive and probative evidence. *Jenkins*, 16 S.W.3d at 477.

When a trial court is asked to determine issues related to possession of and access to a child, its primary consideration must be the child's best interest. *See* Tex. Fam. Code Ann.

14

§ 153.002 (West 2008). In determining the child's best interest, the trial court should consider: the child's wishes; the child's present and future emotional and physical needs; any emotional and physical dangers posed to the child now and in the future; the parties' parenting abilities and any programs or resources available to help the parties promote the child's best interest; the parties' plans for the child; the stability of the various options put forth by the parties; acts or omissions by the parties that would show that the existing parent-child relationship is not a proper one; and any excuse for those acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

"[T]he relationship between parent and child is constitutionally protected," *Quilloin v. Walcott*, 434 U.S. 246, 255(1978), and a parent's right to the care and custody of his child is a fundamental liberty interest more precious than property rights, *In re M.S.*, 115 S.W.3d 534, 547-48 (Tex. 2003) (citing *Santosky v. Kramer*, 455 U.S. 745, 758-59 (1982)). Complete denial of parental access amounts to a near-termination of a parent's rights to his child and should be reserved for situations rising nearly to the level that would call for a termination of parental rights. *See* Tex. Fam. Code Ann. § 161.001 (West Supp. 2011) (grounds for termination of parental rights). Thus, a "complete denial of access should be rare," *In re Walters*, 39 S.W.3d 280, 287 (Tex. App.—Texarkana 2001, no pet.), and reserved only for "the most extreme of circumstances," *In re E.N.C.*, No. 03-07-00099-CV, 2009 WL 638188, at *15 (Tex. App.—Austin Mar. 13, 2009, no pet.) (mem. op.); *see also Hale v. Hale*, No. 04-05-00314-CV, 2006 WL 166518, at *2 (Tex. App.—San Antonio Jan. 25, 2006, pet. denied) (mem. op.) ("a complete denial of access should be rare" and possessory conservator should not be denied visitation "except in extreme circumstances"); *Green v. Green*, 850 S.W.2d 809, 812 (Tex. App.—El Paso 1993, no writ) (parent's entitlement to periodic

15

visitation with child "cannot be denied except in extreme circumstances"). In such cases, we must find a balance between deferring to the trial court's factual determinations and carefully examining the record for evidence of extreme circumstances, holding the evidence to a higher standard than we would an order that merely limited a parent's access. *In re E.N.C.*, 2009 WL 638188, at \*18 (courts should apply "higher standard . . . in reviewing a complete denial of access"); *Allison v. Allison*, 660 S.W.2d 134, 137 (Tex. App.—San Antonio 1983, no writ) (citing *Schiesser v. State*, 544 S.W.2d 373, 378 (Tex. 1976)) ("Our Supreme Court has recognized that the natural right which exists between parents and their children is one of constitutional dimensions, therefore, this case must be strictly scrutinized.").

At the hearing on access, the Department elicited testimony from Shana Lewis, one of K.P.'s therapists. According to Lewis, K.P. reported that one night Donna forced Carl to take K.P. away from the house, whereupon Carl took K.P. to a hotel to spend the night. When Carl returned the next day, Donna refused his request for permission to bring K.P. home. As a result, he and K.P. spent another night away from home. K.P. stated that she was very hurt by her mother's behavior. K.P. told Lewis that on another night, Donna was angry with K.P. and made her remove her shirt, leaving her with only pajama bottoms and a sheet. K.P. stated that she was very cold; later that evening her father brought her a shirt and blanket, but Donna returned to the room and took the blanket and shirt away from her. K.P. told Lewis that on one occasion Donna taped K.P.'s eyes, nose, and mouth shut in order to keep her quiet. K.P. stated that it hurt her when Donna removed the tape. K.P. reported to Lewis another incident in which Donna put K.P. into an empty bathtub and poured ice cubes over her head. According to K.P., Donna once hit her in the jaw, causing her

16

to swallow a tooth, and once, while shopping, pushed her into a wall in the back of the store, causing a bump on her head. K.P. reported to Lewis that she hates Donna and believes that Donna hates her. K.P. told Lewis that she is afraid of her mother, and she appeared to Lewis to be disturbed when discussing Donna. K.P. has expressed that she never wants to see Donna again.

Lewis's recommendation that Donna have no access to K.P. was based on her opinion that K.P. becomes very disturbed even discussing Donna and that it "psychologically thwarts [her] progress." Lewis testified that K.P. currently suffers from post-traumatic stress disorder resulting from the traumatic experiences she has had and also suffers from depression and anxiety. Lewis is treating these issues by trying to help K.P. learn to regulate her emotions through relaxation techniques and cognitive behavioral therapy. According to Lewis, K.P. is currently very vulnerable and needs to work on her self esteem, confidence, and assertiveness. Lewis testified that K.P., as a child victim of trauma, needs a "safe environment that is consistent where [she] does not have to worry about being afraid of certain things," and that Donna's presence creates fear and anxiety that is detrimental to her psychological health. Lewis recommended that no visitation with Donna was in K.P.'s best interest to avoid reintroducing traumatic events. This evidence supports the trial court's implied finding that any contact with Donna would not be in K.P.'s best interest, and we cannot conclude that the trial court abused its discretion by denying Donna any access to K.P.

The Philipps also appear to complain on appeal that the trial court erred by including an injunction prohibiting Donna from having any contact with K.P. because the Department did not request or plead for injunctive relief. Texas Rule of Civil Procedure 301 requires the trial court's judgment to conform to the pleadings, Tex. R. Civ. P. 301, and due process requires that a litigant

17

be given fair notice of the issues that will be decided in the litigation. *See Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983). In cases affecting the parent-child relationship, however, where the best interest of the child is always the overriding consideration, courts have overlooked technical rules of pleading and practice and found that fair notice is afforded when the pleadings generally invoke the court's jurisdiction over custody and control of a child. *See, e.g.*, *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967). "[O]nce the child is brought under [the court's] jurisdiction by suit and pleading cast in terms of custody and control, it becomes the duty of the court in the exercise of its equitable powers to make proper disposition of all matters comprehended thereby in a manner supported by the evidence." *Id.* We believe the Philipps were given fair notice of the possibility of injunctive relief related to access. In any event, any error in including the injunction in the order is harmless since a separate provision in the order already denies Donna any contact with K.P. *See* Tex. R. App. P. 44.1(a). We overrule the Philipps' third appellate issue.

***Issue Four—Did the trial court err in naming nonparent possessory conservators?***

In their fourth appellate issue, the Philipps argue that the trial court erred in naming Meyer and Galaviz nonparent possessory conservators of K.P., despite the fact that the MSA specifically states that they are "to be appointed non-parent possessory conservators." We understand the Philipps to argue that even though the parties agreed to name Meyer and Galaviz nonparent possessory conservators, the trial court erred in rendering judgment to that effect without hearing evidence that doing so was in K.P.'s best interest. As an initial matter, the Philipps did not object to this aspect of the order at the hearing on the merits and in fact agreed to it at the time the order was rendered. Even if they have not waived this challenge, their reliance on family code

18

section 153.0071(e-1) to support their argument that the trial court should have refused to render judgment in accordance with the terms of the MSA is misplaced. This section only permits the trial court to "decline to enter judgment" on an MSA when two conditions are met: (1) one party to the agreement was a victim of family violence, and that circumstance impaired the party's ability to make decsions; and (2) the agreement is not in the child's best interest. Tex. Fam. Code Ann. § 153.0071(e-1). There was no evidence at trial that either Carl or Donna was a victim of family violence. Thus, section 153.0071(e-1) did not authorize, much less require, the trial court to decline to render judgment naming Meyer and Galaviz nonparent possessory conservators as set forth in the MSA. Moreover, although a trial court may do so if presented with proper facts, nothing in section 153.0071 requires best-interest hearings in every case involving a mediated settlement agreement. *Beyers v. Roberts*, 199 S.W.3d 354, 360-61 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *see also In re C.A.K.*, 155 S.W.3d 554, 560 (Tex. App.—San Antonio 2004, pet. denied) (trial court did not err in failing to conduct best interest hearing where parties waived right to challenge best interest in binding arbitration agreement). Thus, the trial court did not err in appointing Meyer and Galaviz as nonparent possessory conservators pursuant to the MSA without hearing evidence that it was in K.P.'s best interest. We overrule the Philipps' fourth appellate issue.

## CONCLUSION

For the foregoing reasons, we modify the trial court's order by deleting the following portions of the order: (1) the language "with the exception of the parent possessory conservators who are not entitled to access to psychological records of the child" from section 7.5.3; (2) the

language "with the exception of **DONNA PHILIPP**" from section 7.5.6; and (3) section 8, entitled "Passport for child," in its entirety.  As modified, we affirm the trial court's order.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Modified and, as Modified, Affirmed

Filed:   April 4, 2012